IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

ACCESS 4 ALL, INC., et al.     :

       Plaintiffs,        :

     v.                     :     Case No. 2:06-cv-0374

OM MANAGEMENT, LLC, et al.    :     MAGISTRATE JUDGE KEMP

                            :

       Defendants.

OPINION AND ORDER

This disability discrimination case is before the Court on a motion for summary judgment filed by plaintiffs, Access 4 All, Inc. and Randy Young.  For the following reasons, the motion will be denied.

I.

The following facts are largely undisputed in the record.  Mr. Young is a disabled Ohio resident who qualifies as an individual with disabilities as defined by the American with Disabilities Act ("ADA"), 42 U.S.C. §§ 12181, *et seq*.  The defendants, OM Management, LLC and OM Shakti Hospitality (collectively known as "defendants"), own and operate the Hamilton Inn Plaza located on South Hamilton Road in Franklin County, Ohio.  Access 4 All is a non-profit Florida corporation whose members are individuals with disabilities as defined by the ADA.  Access 4 All's purpose is "to represent the interest of its members by assuring places of public accommodation are accessible to and usable by the disabled ... ." (Compl. at ¶ 7).

Mr. Young visited the Hamilton Inn Plaza and allegedly encountered architectural barriers that endangered his safety as a disabled individual and violated the ADA.  Consequently, Mr. Young and Access 4 All brought suit seeking

> [i]njunctive relief against the Defendants
> including an order to make all readily
> achievable alterations to the facility; or to
> make such facility readily accessible to and
> usable by individuals with disabilities to the
> extent required by the ADA; and to require the
> Defendants to make reasonable modifications in
> policies, practices or procedures, when such
> modifications are necessary to afford all
> offered goods, services, facilities,
> privileges, advantages or accommodations to
> individuals with disabilities; and by failing
> to take such stops that may be necessary to
> ensure that no individual with a disability is
> excluded, denied services, segregated or
> otherwise treated differently than other
> individuals because of the absence of
> auxiliary aids and services.

(Id. at ¶ 17b). Mr. Young allegedly hired an expert to determine
what architectural barriers exist in violation of the ADA.

II.

Fed. R. Civ. P. 56(c) provides:

> The judgment sought shall be rendered
> forthwith if the pleadings, depositions,
> answers to interrogatories, and admissions on
> file, together with the affidavits, if any,
> show that there is no genuine issue as to any
> material fact and that the moving party is
> entitled to judgment as a matter of law.

"[T]his standard provides that the mere existence of some alleged
factual dispute between the parties will not defeat an otherwise
properly supported motion for summary judgment; the requirement is
that there be no genuine issue of material fact." Anderson v.
Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986)(emphasis in
original); Kendall v. The Hoover Co., 751 F.2d 171, 174 (6th
Cir.1984).

Summary judgment will not lie if the dispute about a material
fact is genuine; "that is, if the evidence is such that a
reasonable jury could return a verdict for the nonmoving party,"

2

Anderson, 477 U.S. at 248. The purpose of the procedure is not to resolve factual issues, but to determine if there are genuine issues of fact to be tried. Lashlee v. Sumner, 570 F.2d 107, 111 (6th Cir.1978). Therefore, summary judgment will be granted "only where the moving party is entitled to judgment as a matter of law, where it is quite clear what the truth is,...[and where] no genuine issue remains for trial,...[for] the purpose of the rule is not to cut litigants off from their right of trial by jury if they really have issues to try." Poller v. Columbia Broadcasting Systems, Inc., 368 U.S. 464, 467 (1962); accord, County of Oakland v. City of Berkley, 742 F.2d 289, 297 (6th Cir.1984).

In making this inquiry, the standard to be applied by the Court mirrors the standard for a directed verdict. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); Anderson, 477 U.S. at 250.

> The primary difference between the two motions is procedural: summary judgment motions are usually made before trial and decided on documentary evidence, while directed verdict motions are made at trial and decided on the evidence that has been admitted. Bill Johnson's Restaurants, Inc. v. NLRB, 461 U.S. 731, 745, n. 11 (1983). In essence, though, the inquiry under each is the same: whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.

Accordingly, although summary judgment should be cautiously invoked, it is an integral part of the Federal Rules which are designed "to secure the just, speedy and inexpensive determination of every action." Celotex, 477 U.S. at 327 (quoting Fed.R.Civ.P. 1).

In a motion for summary judgment the moving party bears the "burden of showing the absence of a genuine issue as to any material fact, and for these purposes, the [evidence submitted] must be viewed in the light most favorable to the opposing party."

3

Adickes v. S. H. Kress & Co., 398 U.S. 144, 157 (1970) (footnote omitted); accord, Adams v. Union Carbide Corp., 737 F.2d 1453, 1455-56 (6th Cir.1984), cert. denied, 469 U.S. 1062 (1985). Inferences to be drawn from the underlying facts contained in such materials must be considered in the light most favorable to the party opposing the motion. United States v. Diebold, Inc., 369 U.S. 654, 655 (1962); Watkins v. Northwestern Ohio Tractor Pullers Association, Inc., 630 F.2d 1155, 1158 (6th Cir.1980). Additionally, "unexplained gaps" in materials submitted by the moving party, if pertinent to material issues of fact, justify denial of a motion for summary judgment. Adickes, 398 U.S. at 157-60; Smith v. Hudson, 600 F.2d 60, 65 (6th Cir.1979).

If the moving party meets its burden and adequate time for discovery has been provided, summary judgment is appropriate if the opposing party fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial. Celotex, 477 U.S. at 322. The mere existence of a scintilla of evidence in support of the opposing party's position will be insufficient; there must be evidence on which the jury could reasonably find for the opposing party. Anderson, 477 U.S. at 251. As is provided in Fed. R. Civ. P. 56(e):

> When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, shall be entered against him.

Thus, "a party cannot rest on the allegations contained in his complaint in opposition to a properly supported summary judgment motion made against him." First National Bank of Arizona v. Cities

4

Service Co., 391 U.S. 253, 289 (1968)(footnote omitted).

III.

In the plaintiffs' motion for summary judgment, they claim that there are no genuine issues of material fact surrounding whether the defendants violated the ADA. Further, Mr. Young and Access 4 all argue that they have standing to bring this lawsuit. Finally, the plaintiffs contend that there are no genuine issues of material fact in determining whether removing the architectural barriers is "readily achievable." In response, the defendants argue that Mr. Young and Access 4 All do not have standing. Specifically, they claim that Mr. Young lacks standing because there is no evidence that he intends to return to the hotel. The defendants also argue that summary judgment is inappropriate on the "readily achievable" issue. The Court will first address whether Mr. Young and Access 4 All have standing.

A. *Standing*

Pursuant to Article III of the Constitution, federal courts have jurisdiction only over actual cases or controversies. To establish standing under the Constitution, a plaintiff must demonstrate that (1) he has suffered an "injury in fact," that is "an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical"; (2) a causal connection between the injury and the challenged conduct, that is, "the injury has to be fairly ... traceable to the challenged action of the defendant, and not ... the result [of] the independent action of some third party not before the court"; and (3) it must be "likely," as opposed to "speculative" that the injury will be "redressed by a favorable decision." Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61 (1992). An abstract injury is not sufficient. City of Los Angeles v. Lyons, 461 U.S. 95, 101 (1983). Rather, a plaintiff must show that he "has sustained or is immediately in danger of sustaining

5

some direct injury" as the result of the challenged conduct. <u>Id.</u>
at 102.

*Mr. Young*

The record indicates that Mr. Young visited the defendants'
hotel and allegedly discovered numerous ADA violations. He
subsequently sued the defendants for injunctive relief under Title
III of the ADA. The defendants contend, however, that because
there is no evidence in the record that Mr. Young "intends to avail
himself of the goods and services available at Defendants' hotel"
in the future, he does not have standing under Article III.
(Defendants' Memo. in Opp. to Summ. Judg. at p. 3). In essence,
the defendants argue that, because there is no evidence that Mr.
Young is returning to the hotel, his injury is not "real and
immediate" but is "conjectural and hypothetical." The Court finds
this argument unpersuasive and concludes that Mr. Young does have
standing. This conclusion is consistent with <u>Lyons</u>, <u>Lujan</u> and
<u>Friends of the Earth, Inc. v. Laidlaw Environmental Services (TOC),
Inc.</u>, 528 U.S. 167 (2000).

<u>Lyons</u> involved a suit to enjoin as unconstitutional the City
of Los Angeles Police Department's use of choke-holds in instances
where officers were not threatened with death or serious bodily
injury. The plaintiffs in <u>Lyons</u> had been arrested and subjected to
a choke-hold on one prior occasion, and alleged that because such
action was routinely engaged in by LAPD officers, they might suffer
the same injury again. Ultimately, the United States Supreme Court
concluded that the plaintiffs did not have standing to seek
injunctive relief, nothing that:

> Lyons' standing to seek the injunction
> requested depended on whether he was likely to
> suffer future injury from the use of the
> chokeholds by police officers.
>
> ***

6

> In order to establish an actual controversy in
> this case, Lyons would have had not only to
> allege that he would have another encounter
> with the police but also to make the
> incredible assertion either, (1) that *all*
> police officers in Los Angeles *always* choke
> any citizen with whom they happen to have an
> encounter, whether for the purpose of arrest,
> issuing a citation or for questioning or, (2)
> that the City ordered or authorized police
> officers to act in such a manner.
>
> ***
>
> Absent a sufficient likelihood that he will
> again be wronged in a similar way, Lyons is no
> more entitled to an injunction than any other
> citizen of Los Angeles; and a federal court
> may not entertain a claim by any or all
> citizens who no more than assert that certain
> practices of law enforcement officers are
> unconstitutional.

Lyons, 461 U.S. at 105-06, 111 (internal citations).

In Lujan, the Supreme Court considered a challenge to a federal regulation that provided that the Endangered Species Act did not apply to United States government activities outside the United States. The plaintiffs claimed that the failure to comply with the ESA "with respect to certain funded activities abroad increases the rate of extinction of endangered and threatened species." Lujan, 504 U.S. at 562 (citations omitted).

The Court concluded that the plaintiffs lacked standing because they could not show a sufficient likelihood that they would be injured in the future by a destruction of an endangered species abroad. Despite the fact that some plaintiffs provided affidavits of previously taken trips where they viewed endangered species, the Court stated that the plaintiffs' previous visits and desire to return to see the animals was insufficient for standing.

> That the women "had visited" the areas of the
> projects before the projects commenced proves

> nothing. As we have said in a related
> context, "'Past exposure to illegal conduct
> does not in itself show a present case or
> controversy regarding injunctive relief ... if
> unaccompanied by any continuing, present
> adverse effects.'" And the affiants'
> profession of an "inten[t]" to return to the
> places they had visited before-where they will
> presumably, this time, be deprived of the
> opportunity to observe animals of the
> endangered species-is simply not enough. Such
> "some day" intentions-without any description
> of concrete plans, or indeed even any
> specification of when that some day will be-do
> not support a finding of the "actual or
> imminent" injury that our cases require.

Id. at 564 (internal citations and footnotes omitted).

Finally, in Friends of the Earth, the plaintiffs brought suit
under the citizen suit provision of the Clean Water Act, which
authorizes federal courts to entertain suits initiated "by a person
... having an interest which is or may be adversely affected."
Friends of the Earth, 528 U.S. at 173; 33 U.S.C. §§ 1365(a) and
(g). Generally, the plaintiffs claimed that the defendant polluted
the area of a river that many of the plaintiffs use for
recreational purposes. For example, some plaintiffs asserted that
they previously picnicked, walked and birdwatched along the river
in question but no longer did so because of the potential harm
caused by the defendant's pollutants. The Court concluded that
this was sufficient to establish standing:

> In contrast [to Lujan] the affiants and
> testimony presented by FOE in this case assert
> that Laidlaw's discharges, and the affiant
> members' reasonable concerns about the effects
> of those discharges, directly affected those
> affiants' recreational, aesthetic, and
> economic interests. These submissions present
> dispositively more than the mere "general
> averments" and "conclusory allegations" found
> inadequate in [Lujan]. Nor can the affiants'
> conditional statements-that they would use the

8

> nearby [river] for recreation if Laidlaw were
> not discharging pollutants into it-be equated
> with the speculative "'some day' intentions"
> to visit endangered species halfway around the
> world that we held insufficient to show
> injury in fact in *Defenders of Wildlife*.
>
> ***
>
> Here, in contrast to [*Lyons*], it is undisputed
> that Laidlaw's unlawful conduct-discharging
> pollutants in excess of permit limits-was
> occurring at the time the complaint was filed.
> Under *Lyons*, then, the only "subjective" issue
> here is "[t]he reasonableness of [the] fear"
> that lead the affiants to respond to that
> concededly ongoing conduct by refraining from
> use of the [river] and surrounding areas.
> Unlike the dissent ... we see nothing
> "improbable" about the proposition that a
> company's continuous and pervasive illegal
> discharges of pollutants into a river would
> cause nearby residents to curtail their
> recreational use of that waterway and would
> subject them to other economic and aesthetic
> harms.

Id. at 183-84 (internal citations omitted).

First, whereas in Lyons the plaintiffs failed to establish that they were likely to suffer future injury from the use of the chokeholds by police officers, Mr. Young is continually subjected to the lack of ADA-compliant architectural barriers every time he visits the defendants' hotel. In other words, because these barriers are part of the hotel's permanent structure and cannot be remedied without renovation, Mr. Young, as well as other disabled individuals, are continually subjected to the architectural barriers every time they visit the property. This creates an actual controversy with an injury-in-fact that is consistent with Lyons. See Lyons, 461 U.S. at 105-06 ("In order to establish an actual controversy in this case, Lyons would have had not only to allege that he would have another encounter with the police but

also ... that *all* police officers in Los Angeles *always* choke any citizen with whom they happen to have an encounter ...").

Second, unlike the hypothetical injury in <u>Lujan</u>, where the plaintiffs may or may not have been subjected to the detrimental effects of not applying the ESA to the United States government's activities overseas, the failure of the hotel to comply with the ADA is continual and concrete until the defendants take the affirmative steps to remedy it.  The lack of specific plans in <u>Lujan</u> was based on the premise that there is no way to determine whether an unplanned visit in the future would deprive the plaintiffs of the opportunity to observe animals of the endangered species.  Here, given the hotel's permanent structure, there is no chance of hypothetical or illusory injury when Mr. Young visits the defendants' hotel in the future.  Instead, the injury is actual and real and will definitely occur whenever Mr. Young attempts to enjoy the benefits of the defendants' property.  Further, Mr. Young has previously experienced the injury in question, and is not attempting to bring the hotel to compliance based on conclusory allegations or general averments about the hotel's structure.

Finally, like <u>Friends of the Earth</u>, the defendants' lack of ADA-compliance was (and still is) occurring at the time Mr. Young filed the complaint.  Instead of forcing Mr. Young to make reservations at the hotel and continually visit the hotel (only to be repeatedly subjected to the problems that he faced as a disabled individual), the Court sees nothing improbable about the proposition that the hotel's continuous and pervasive noncompliance is sufficient to establish a concrete and real injury sufficient to establish standing.  <u>See</u> 42 U.S.C. § 12188(a)(1)("Nothing in this section shall require a person with a disability to engage in a futile gesture if such person has actual notice that a person or organization covered by this subchapter does not intend to comply with its provisions").

The Courts of Appeals in the Eighth and Ninth Circuits, as well as the United States District Court in Maine, faced similar facts in Steger v. Franco, Inc., 228 F.3d 889 (8th Cir.2000), Pickern v. Holiday Quality Foods Inc., 293 F.3d 1133 (9th Cir.2002) and Dudley v. Hannaford Bros. Co., 146 F.Supp.2d 82 (D.Me. 2001). In Steger, the Court of Appeals held that a blind plaintiff had standing to seek injunctive relief under the ADA against the defendant because the plaintiff "entered the [defendant's building] before commencing this lawsuit. While dining at the Tuscany Coffee Shop, [the plaintiff] entered the ... common area to access the men's restroom, but was unable to do so because the restroom's signage was not ADA-compliant." Steger, 228 F.3d at 893. The Court noted that "[a]lthough plaintiffs need not engage in the futile gesture of visiting a building containing known barriers that the owner has no intention of remedying ... they must at least prove knowledge of the barriers and that they would visit the building in the imminent future but for those barriers. Id. at 892.

In Pickern, one of the plaintiffs, Jerry Doran, was a paraplegic who sought injunctive relief against a grocery store located in his grandmother's hometown, which was approximately 70 miles from where the plaintiff lived. The plaintiff filed a declaration that stated he has visited the grocery store and encountered architectural barriers which violated the ADA. The plaintiff further indicated that he would use the grocery store if it was ADA-compliant. The Court of Appeals concluded that the plaintiff had standing to sue for injunctive relief:

> If Doran's statements are true, he has suffered and is suffering an injury within the meaning of Title III of the ADA.
>
> * * *
>
> By particularized, we mean that the injury

11

must affect the plaintiff in a personal and individual way. In the context of the ADA, we understand that to mean that Doran must himself suffer an injury as a result of the Paradise store's noncompliance with the ADA. We hold that in stating that he is currently deterred from attempting to gain access to the Paradise store, Doran has stated sufficient facts to show concrete, particularized injury.

***

In addition to suffering a concrete injury particular to himself, Doran must also have suffered actual or imminent injury. We hold that a disabled individual who is currently deterred from patronizing a public accommodation due to a defendant's failure to comply with the ADA has suffered "actual injury." Similarly, a plaintiff who is threatened with harm in the future because of existing or imminently threatened non-compliance with the ADA suffers "imminent injury."

Doran has visited Holiday's Paradise store in the past and states that he has actual knowledge of the barriers to access at that store. Doran also states that he prefers to shop at Holiday markets and that he would shop at the Paradise market if it were accessible. This is sufficient to establish actual or imminent injury for purposes of standing.

Pickern, 293 F.3d at 1137-38 (internal citations omitted).

In Dudley, a disabled plaintiff attempted to buy wine coolers at a grocery store, but the check-out clerk refused to sell him alcohol because he appeared intoxicated. The plaintiff spoke to the store manager and explained that he was sober and was disabled in such a way that made him appear intoxicated. The plaintiff brought suit against the grocery store under the ADA, and the court concluded that he had standing. The Court stated:

> The brunt of Defendant's argument is that Plaintiff lacks standing because he allegedly

12

suffered discrimination only once in the past,
and that therefore there is no actual or
imminent threat of harm. Plaintiff, however,
does not allege that he suffered one act of
discrimination in the past. Rather, he also
alleges that Defendant's discriminatory
practice continues to exist.

                    ***

In the present action, Plaintiff has alleged
that Defendant once refused to sell him
alcohol based on a disability and that
Defendant has not altered its policies towards
accommodating disabled persons trying to
purchase alcohol. Furthermore, Plaintiff
alleges that he often visits Shop 'n Save
stores, that he would like to purchase
alcohol, but that based on the [previous
events] he has not tried to do so. Based on
this situation, Plaintiff has suffered the
invasion of a legally protected interest that
is concrete, personal and individual to
Plaintiff. Moreover, the facts alleged
indicate that if Plaintiff attempted to
purchase alcohol today, Defendant again would
refuse to sell it to him based on his
disability, and therefore the invasion of
Plaintiff's rights is actual and imminent, not
conjectural and hypothetical. In other words,
by failing to revise its practices to
accommodate Plaintiff's disability, Defendant
continues to discriminate against Plaintiff
based on his disability. Therefore, Plaintiff
suffers from an injury in fact.

Dudley, 146 F.Supp. at 85-86 (internal footnote omitted).

It is established that Mr. Young has previously visited the
defendants' hotel. Further, in the complaint, Mr. Young states
that in the future he "desires to visit HAMILTON INN PLAZA not only
to avail himself of the goods and services available at the
property but to assure himself that this property is in compliance
with the ADA so that he and others similarly situated will have
full and equal enjoyment of the property without fear of

discrimination." (Compl. at ¶ 9 (emphasis in original)).[1] Accordingly, following the holdings in Steger, Pickern and Dudley, Mr. Young has standing to seek injunctive relief against the defendants. Because of the architectural barriers at the hotel, Mr. Young is deterred from patronizing a public accommodation due to the hotel's failure to comply with the ADA. The potential of real harm continues until the hotel remedies these problems consistent with the law.

Once Mr. Young visited the property and was subjected to the discrimination there, he suffered a concrete and particularized injury that is actual and imminent until the hotel is ADA-compliant. It would be an exercise in futility for Mr. Young to regularly visit the property or make hotel reservations only to be continually subjected to the harm in order to "realize" the injury sufficient for standing. Additionally, it would be a waste of judicial economy to require an ADA plaintiff to provide a declaration to indicate only that he or she wishes to visit the hotel in the future when that same plaintiff was already subjected to discrimination during a previous visit. If a plaintiff visits a property once and is subjected to discrimination in violation of the ADA, a Court can conclude that the disabled individual may

---

[1] The defendants contend that because Mr. Young does not provide a declaration indicating that he intends to visit the defendants' hotel in the future, the Court cannot rely on the allegations in the complaint to support his summary judgment motion. The Court rejects this argument for two reasons. First, the Court notes that there is nothing in the record to the contrary. Although, as the defendants point out, Mr. Young is engaged in a litany of lawsuits in this Court, there is still a real possibility that, if the hotel is ADA-compliant, he may visit the property in the future. Second, as the defendants note - a party in opposition to a motion in summary judgment cannot rest on the allegations in the complaint to defeat the motion. First National Bank of Arizona, 391 U.S. at 289. Here, the defendants, not Mr. Young, are the party opposing the motion.

visit the property again without filing the legal formality indicating that but for the architectural barriers, the disabled plaintiff will return to the property.

It is consistent with Article III's case and controversy requirement, as well as the ADA, for Mr. Young to experience the injury once and then seek to remedy it. Article III cannot require an ADA plaintiff to continue to be subjected to injury in order to have standing to seek injunctive relief; nor is it required for a plaintiff that has previously experienced injury to "jump through a hoop" of highlighting future use in order to prove "actual and imminent" injury. Because the injury is part of the hotel structure, the injury is always "actual and imminent" and will continue to hold that status until the property becomes ADA-compliant. But see, e.g., Access for American, Inc. v. Assoc. Out-Door Clubs, Inc., 188 Fed.Appx. 818 (11th Cir.2006)("[W]e find no error in the district court's conclusion that, as [the plaintiff] lacked the requisite concrete and specific intent to return to the Track because he could not demonstrate that there was any reasonable chance of his revisiting the track, other than "someday," he was not entitled to injunctive relief"); Harris v. Del Taco, Inc., 396 F.Supp.2d 1107 (C.D. Cal. 2005)(despite affidavit that plaintiff would return to defendant's restaurant, the plaintiff lacked standing because he lived nearly 600 miles away from the defendant's building and only visited the restaurant once prior to filing suit). Thus, because the "causal connection" and the "redressability" prongs are not contested and are supported by the record, the Court concludes that Mr. Young has standing.

*Access 4 All*

Generally, an association has standing to bring suit on behalf of its members when (1) its members would otherwise have standing to sue in their own right; (2) the interests it seeks to protect are germane to the organization's purpose; and (3) neither the

claim asserted nor the relief requested requires the participation
of individual members in the lawsuit. <u>Hunt v. Wash. State
Advertising Comm.</u>, 432 U.S. 333, 343 (1977). In the instant case,
the record reflects that Mr. Young was a member of Access 4 All for
only a portion of 2006. Mr. Young stated:

> I became a member of Access 4 All in 2006
> (exact date cannot be recalled) and resigned
> in December 2006 due to the group's failure to
> support my initiative of growing the local
> Ohio chapter. I paid no fees, did not have a
> membership number and held no position in the
> group.

(Defendants' Memo. in Opp. to Summ. Judg., Ex. A at No. 16).
Accordingly, because Mr. Young is no longer a member of the
association, Access 4 All lacks standing to seek injunctive relief.

IV.

Title III of the ADA prohibits discrimination against disabled
individuals in places of public accommodation. 42 U.S.C. §
12182(a). The ADA states that "discrimination" of disabled
individuals includes "a failure to remove architectural barriers
... in existing facilities ... where such removal is readily
achievable ... ." 42 U.S.C. § 12182(b)(2)(A)(iv). "'[R]eadily
achievable' means easily accomplishable and able to be carried out
without much difficulty or expense." 42 U.S.C. § 12181(9). When
determining whether the removal of architectural barriers are
readily achievable, factors to be considered are:

> (1) the nature and cost of the action needed
> under [the ADA];
>
> (2) the overall financial resources of the
> facility; the effect on expenses and
> resources; or the impact otherwise of such
> action upon the operation of the facility;
>
> (3) the overall financial resources of the
> covered entity; the overall size of the
> business of a covered entity with respect to

16

> the number of its employees; the number, type,
> and location of its facilities; and
>
> (4) the type of operation or operations of the
> covered entity; including the composition,
> structure, and functions of the workforce of
> such entity; the geographic separateness,
> administrative or fiscal relationship of the
> facility or facilities in question to the
> covered entity.

Id. In determining whether the removal of architectural barriers
is readily achievable is an issue of fact, Disabled Patriots of
America, Inc. v. ODCO Investments, Ltd., No. 3:04CV7399, 2006 WL
782725, *4 (N.D. Ohio March 27, 2006)(unpublished)(citing D'Lil v.
Stardust Vacation Club, No. CIV-S-oo-1496DFL PAN, 2001 WL 1825832
(E.D.Cal. Dec. 21, 2001) and Access Now, Inc. v. S. Fla. Stadium
Corp., 161 F.Supp.2d 1357, 1371 (S.D.Fla. 2001)), and should be
made on a case-by-case basis in light of the factors listed in §
12181(9), Colorado Cross Disability Coalition v. Hermanson Family
Ltd., 264 F.3d 999, 1009 (10th Cir.2001).

It appears that there is limited case law in this circuit to
assist in determining which party has the burden of proof as to
whether the removal of an architectural barrier is readily
achievable. A recent case from the Northern District of Ohio
adopted the burden-shifting analysis established in Colorado Cross
by the Tenth Circuit Court of Appeals. ODCO Investments, Ltd.,
2006 WL 782725, *4; accord Colorado Cross, 264 F.3d at 1002-07.
After analyzing the ADA's text, as well as analogous terminology,
the Colorado Cross court held:

> Plaintiff bears the initial burden of
> production to present evidence that a
> suggested method of barrier removal is readily
> achievable, i.e., can be accomplished easily
> and without much difficulty or expense. If
> Plaintiff satisfies this burden, Defendant
> then has the opportunity to rebut that
> showing. Defendant bears the ultimate burden

17

of persuasion regarding its affirmative
defense that a suggested method of barrier
removal is not readily achievable.

Colorado Cross, 264 F.3d at 1005-06 (citing Pascuiti v. New York
Yankees, No. 98 CIV.8186(SAS), 1999 WL 1102748 (S.D.N.Y. Dec. 6,
1999)(unpublished)); accord Gathright-Dietrich v. Atlanta
Landmarks, Inc., 452 F.3d 1269 (11th Cir.2006)(adopting the
Colorado Cross burden-shifting framework). The plaintiff's initial
burden of proof includes "precise cost estimates regarding the
proposed modification," Colorado Cross, 264 F.3d at 1009, as well
as "sufficient evidence so that a defendant can evaluate the
proposed solution to the barrier, the difficulty of accomplishing
it, the cost implementation, and the economic operation of the
facility, Gathright-Dietrich, 452 F.3d at 1274. See MacClymonds v.
IMI Investments, Inc., No. H-05-2595, 2007 WL 1306803, *6 (S.D.
Tex. Apr. 5, 2007)(highlighting variances among the courts in
determining what satisfies plaintiff's initial burden of proof).


    Preliminarily, the Court notes that while Mr. Young filed an
expert report, the report itself is not properly authenticated and
subsequently cannot be used in determining the merits of his
summary judgment motion. See Fed.R.Civ.P. 56(e). The Court
specifically refers to the fact that the report is neither sworn
testimony nor accompanied by a sworn affidavit. Id. Without the
expert's report, Mr. Young fails to meet the initial burden of
production to present evidence that a suggested method of barrier
removal is readily achievable.

    Nevertheless, assuming the expert's report is admissible,
there is a question about whether Mr. Young satisfied his initial
burden of proof. First, it appears that the cost estimates in the
report are not terribly precise. For example, the report indicates
that the cost to "[c]reate an accessible route that does not

18

require travel in the vehicular route" is "approximately"
$1,200.00. (Plaintiff[']s ADA Expert Report (doc. 26-2 and 26-3)
at p. 8). (See also id. (doc. 26-3) at pp. 13, 21, 25, 26, 32,
46)(approximate cost to restripe parking lot is $2,500.00;
approximate cost to install and mount door signs $250.00;
approximate cost to install ADA compliant sign $25.00/sign;
approximate cost to reinstall toilet $750.00; approximate cost to
widen doorway to make it handicap accessible $1,200.00; approximate
cost for handicap accessible bathtub $6,000; and approximate cost
for roll-in shower $12,000). Second, some alleged violations do
not have any cost of repair, either precise or approximate,
associated with them. (See id. at pp. 24, 27-29)(no approximate or
precise cost for installing handrails on wheelchair ramp,
installing or moving coat hook, modifying sink apron so that there
is at least 29 inches of maneuvering room, and modifying restroom
to include one alternate stall). Further, there is no evidence
that Mr. Young or the plaintiff's expert examined the economic
operation of the defendants' facility to determine the difficulty
in accomplishing the modifications.

Assuming, arguendo, that Mr. Young has met the burden of
proof, the affidavit filed on behalf of the defendants raise
genuine issues of material fact as to whether removing the
architectural barriers is readily achievable. Specifically, the
affidavit indicates:

> The hotel has not made a profit since OM
> Management purchased the Hotel and OM Shakti
> leased the hotel.
>
> In the last three years, in order to keep the
> Hotel afloat, I have worked on the average of
> at least 60 hours of work at the Hotel without
> taking any salary or compensation.
>
> OM Management and OM Shakti do not have any
> funds to remove the "architectural barriers,"
> as defined in the Plaintiffs' Complaint, at

19

the Hotel.

OM Management and OM Shakti are in the process
of selling the Hotel. OM Management and OM
Shakti will not make any profit from the sale
of the Hotel and have encountered a tremendous
amount of loss.

(Aff. of Tushar Shelat at ¶¶ 7-10). This factual question
precludes the entry of summary judgment.

V.

Based on the foregoing, the motion for summary judgment (doc.
24) is DENIED.


/s/ Terence P. Kemp
United States Magistrate Judge

20